**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **SHERRY LYNN F.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 20-1087-JWL** |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions or of Plaintiff's allegations of disabling symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on June 30, 2016. (R. 12, 275).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed to provide appropriate reasons for discounting the opinions of her treating physician, Dr. Buhr, and of the psychologist who examined her, Dr. Gray; and failed to consider all Plaintiff's symptoms, including fatigue and brain fog, when evaluating her allegations of disabling symptoms.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The ALJ decided at step four that Plaintiff is able to perform her past relevant work and did not proceed to the step five analysis.  (R. 20-21).  The court addresses the errors alleged in the order presented in Plaintiff's Brief.

## II.     Evaluation of the Medical Source Opinions

Plaintiff claims the ALJ erred in discounting Dr. Buhr's opinion because it was inconsistent with Plaintiff's unremarkable examinations.  (Pl. Br. 14).  She argues this is error because Dr. Buhr diagnosed fibromyalgia and "[a]n ALJ must rely on more than a lack of objective supporting evidence when considering a claimant's fibromyalgia."  Id. at 15 (quoting West v. Saul, CIV-19-469-SM, 2020 WL 236739, at *5 (W.D. Okla. Jan.

4

15, 2020) (citing Gilbert v. Astrue, 231 F. App'x 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [Plaintiff's] fibromyalgia.")). She points to numerous treatment notes containing her reports of pain and fatigue or lack of energy, and to numerous treatment notes which allegedly "contained a diagnosis of fatigue/generalized weakness/tiredness." (Pl. Br. 15). She argues these notes are important because they support Dr. Buhr's statement that "Plaintiff's symptoms included generalized pain and mental and physical fatigue, and she [(Dr. Buhr)] noted clinical findings included appearing tired." Id. at 15-16 (citing R. 401). Plaintiff cites treatment notes from other providers which in her view also support Dr. Buhr's opinion. Id. at 16. She cites other courts in this District which "have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling." Id. (quoting Zenner v. Saul, 6:18-CV-01191-JTM, 2019 WL 4736954, at *7, *8 (D. Kan. Sept. 27, 2019) (quoting Ward v. Apfel, 65 F. Supp. 2d 1208, 1213 (D. Kan. 1999) and quoting Fox v. Colvin, CV 14-4111-JWL, 2016 WL 164299, at *5 (D. Kan. Jan. 13, 2016))).

Plaintiff claims the ALJ also erred in rejecting portions of the limitations the psychologist, Dr. Gray, opined because the ALJ failed to consider all the evidence. Id. at 17. Plaintiff acknowledges the ALJ found certain of Dr. Gray's limitations "were not supported by the record due to minimal treatment, routine mental status examinations, and Plaintiff's daily activities." Id. She argues, "Treatment notes provide adequate support for Dr. Gray's opined limitations," and, "The ALJ's claim that Plaintiff received minimal treatment is unsupported by the record, as Plaintiff's conditions were

5

continuously and regularly treated throughout the relevant period." (Pl. Br. 17). She argues the ALJ's reliance on daily activities is erroneous because "the ability to engage in limited activities is not inconsistent with disability." Id. at 18 (citing Priest v. Barnhart, 302 F. Supp. 2d 1205, 1215 (D. Kan. 2004) (quoting Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998); and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995))).

The Commissioner argues the ALJ appropriately accorded very little weight to Dr. Buhr's opinion as it was unsupported by and inconsistent with the record evidence (Comm'r Br. 6) or, as stated by the ALJ, "because it was inconsistent with Dr. Buhr's routine treatment and the examinations performed by Dr. Buhr, and because those limitations were 'excessive in light of all of the evidence.'" Id. at 7 (quoting R. 19). He explains how, in his view, the record evidence supports the ALJ's evaluation. (R. 7-10). He concludes, "In essence, Plaintiff's argument is that because she had fibromyalgia, the ALJ was required to rely on Dr. Buhr's opinion, regardless of the evidence." Id. at 10.

The Commissioner argues the ALJ reasonably accorded partial weight to Dr. Gray's opinion and discounted it only to the extent Dr. Gray found Plaintiff was limited in managing her funds and in activities of daily living. Id. at 11. He argues the ALJ provided "good reasons, supported by substantial evidence, discounting these two portions of Dr. Gray's overall opinion." Id. at 12.

### A. Legal Standard to Evaluate Medical Opinions

For claims filed before March 27, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis,

6

what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2020). A physician who has treated a patient frequently over an extended period is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2020) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.     The ALJ's Findings

The ALJ assessed medical opinions from two treating physicians, Dr. Buhr and Dr. Brewer; a physician who performed a consultative examination, Dr. Al-shathir; a psychologist who performed a consultative examination, Dr. Gray; two state agency psychological consultants who reviewed the record, Dr. Locke and Dr. Morgan; and two state agency medical consultants who reviewed the record, Dr. Coleman, and Dr. Corsolini. (R. 18-20).

He accorded "very little weight" to Dr. Buhr's opinion and provided three reasons. He explained:

> The undersigned affords very little weight to this opinion, as it is inconsistent with the routine treatment that Dr. Buhr provided as well as the physical examinations that Dr. Buhr performed. Those examinations reveal little, aside from describing the claimant as exhausted (B2F/119, 128 [R. 525, 534]). One examination, performed around the time this opinion was written, noted weakened strength (B2F/153 [R. 559]), but as noted above, her physical examinations are generally unremarkable. The limitations in this assessment are excessive in light of all of the evidence.

(R. 19).

The ALJ accorded "great weight" to Dr. Al-shathir's opinion because it was consistent with his examination and with the other physical examinations in the record

9

and with the conservative treatment provided Plaintiff. (R. 19). He accorded "partial weight" to Dr. Gray's opinion and explained his bases for doing so:

> It is generally consistent with the evidence as a whole as well as Dr. Gray's own observations. However, given the minimal treatment, routine mental status examinations, and performance of her activities of daily living, the claimant has very few deficits with regard to cognitive functions. As such, a limitation in activities of daily living and managing her funds is slightly inconsistent with the evidence.

Id. at 19-20. The ALJ explained he accorded "great weight" to the opinions of the state agency psychological consultants who found Plaintiff's mental impairments are not severe and found only mild impairments in Plaintiff's abilities in the four mental functional areas. Id. at 20. He found these opinions supported by extensive record citation and consistent with the evidence, with Plaintiff's minimal mental health treatment, and with "her proficiency in performing her activities of daily living." Id.

The ALJ accorded only partial weight to the opinions of the state agency medical consultants, explaining that the record evidence, including hearing testimony, required additional postural limitations to the physical RFC assessed by them. Id. Finally, the ALJ accorded little weight to Dr. Brewer's opinion because it stated a specific finding of disability which is an issue reserved to the Commissioner, and because it "is extremely inconsistent with the routine findings in the physical examination Dr. Brewer performed," and is "inconsistent with the conservative care the claimant received." Id.

### C.  Analysis

The court agrees with Plaintiff and with the cases she relies upon for the proposition that "[a]n ALJ must rely on more than a lack of objective supporting

evidence when considering a claimant's fibromyalgia." (Pl. Br. 15). The court also notes that it decided one of the cases from this district cited by Plaintiff as having "recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling." Id. at 16. The problem with Plaintiff's argument is that she does not argue that the ALJ erred in considering her fibromyalgia. Indeed, the ALJ found fibromyalgia is one of her severe impairments. (R. 14). Moreover, he evaluated the severity of her fibromyalgia in accordance with Listing 14.06. Id. at 16-17. He explained that Plaintiff's fibromyalgia had been confirmed in two examinations which demonstrated 14 positive points and 18 positive points respectively. Id. at 18.

What Plaintiff argues, however, is that because Dr. Buhr diagnosed Plaintiff with fibromyalgia, the ALJ may not rely on routine treatment and unremarkable examinations to discount Dr. Buhr's opinion. In her Reply Brief, Plaintiff characterizes the ALJ's reasons as "based upon the lack of objective findings, which is the very hallmark of fibromyalgia." (Reply 3). Unremarkable examinations may well include the fact of no objective findings and may lead to routine treatment, but that is not all it entails. Examinations which fail to reveal physical or mental functional limitations are also properly characterized as unremarkable. Plaintiff equates "minimal treatment," and perhaps "routine treatment" to treatment which is not continuous and regular over the course of time. (Pl. Br. 17) ("The ALJ's claim that Plaintiff received minimal treatment is unsupported by the record, as Plaintiff's conditions were continuously and regularly treated throughout the relevant period."). However, the ALJ's use of the terms appears to be coextensive with "conservative treatment," treatment which is not aggressive and does

11

not move beyond basic measures. Thus, the ALJ did not discount Dr. Buhr's opinion because the record contained no objective evidence of fibromyalgia, but because the opinion was inconsistent with only routine treatment, and with physical examinations which did not show great functional limitations and because the opined limitations are excessive in light of the evidence. These are specific legitimate reasons for discounting Dr. Buhr's opinion.

Moreover, Plaintiff does not point to record evidence which compels a contrary finding. Plaintiff's citation to treatment notes from Dr. Buhr and from other providers which tend to support Dr. Buhr's opinions do not compel accepting Dr. Buhr's opinion. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

The ALJ provided reasons for discounting Dr. Buhr's opinion and record evidence supports those reasons. The opinion of Dr. Al-shathir, to which the ALJ accorded great weight, and the opinions of the state agency medical consultants, which the ALJ tempered by adding postural limitations, provide additional support for the ALJ's assessment. Plaintiff makes no argument against these opinions or the ALJ's evaluation thereof in her briefs.

Plaintiff's argument of error in evaluating Dr. Gray's opinion appears to misunderstand that evaluation. Although the ALJ stated he accorded only "partial weight" to Dr. Gray's opinion, he found the opinion "is generally consistent with the evidence as a whole as well as Dr. Gray's own observations." (R. 19-20). Thus, he generally accepted Dr. Gray's opinion, noting Plaintiff "has no difficulty appropriately interacting socially, … is able to adapt to changes in her environment, … ha[d] no problems completing a simple three-step direction, … [and] ha[d] minimal problems sustaining attention and remaining on task." (R.19) (quoting without citation Dr. Gray's "Findings of Capabilities" R. 614-15). The ALJ only discounted Dr. Gray's opinion of "some current restrictions in [Plaintiff']s daily living activities" (R. 19) (quoting R. 614), and "that her mental disorder would reduce her ability to make responsible and consistent financial decisions." Id. (quoting R. 615). He found "a limitation in activities of daily living and managing her funds is slightly inconsistent with the evidence" and discounted those limitations because "given the minimal treatment, routine mental status examinations, and performance of her activities of daily living, the claimant has very few deficits with regard to cognitive functions." Id. at 20. Plaintiff's argument that her "limited daily activities are not sufficient to support the rejection" of Dr. Gray's opinion misunderstands both Dr. Gray's opinion and what it was that the ALJ rejected. The ALJ did not reject Dr. Gray's opinion because Plaintiff could perform certain daily activities. Rather, he rejected Dr. Gray's opinion that Plaintiff had "some current [undefined] restrictions in [her] daily living activities due to her physical ailments and mental illness" because "the minimal treatment, routine mental status examinations, and performance of

13

her activities of daily living" indicated she "has very few deficits with regard to cognitive functions." (R. 19-20). While Plaintiff clearly views Dr. Gray's opinion differently than did the ALJ, and supports her view with certain record evidence, record evidence also supports the ALJ's understanding, and Plaintiff has not presented evidence which compels her understanding contrary to the ALJ's. The court may not reweigh the evidence and substitute its judgment for that of the ALJ. Moreover, the state agency psychological consultants also found Plaintiff's mental impairments were not severe, providing considerable support for the ALJ's understanding of the evidence. The ALJ accorded those opinions great weight and Plaintiff does not argue error in this finding. Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

### III.   Evaluation of Plaintiff's Allegations of Symptoms

Plaintiff argues:

> In this case, the ALJ utterly failed to consider fatigue or Plaintiff's memory issues related to brain fog. He certainly considered Plaintiff's pain, but rejected her allegations because she did not attempt physical therapy or exercise, was not on strong pain medication, and received conservative treatment without surgery. [(R. 18)]. However, the ALJ did not explain why Plaintiff's allegations of fatigue were rejected, especially when he noted that Plaintiff appeared exhausted in treatment notes. [(R. 19)]. He did not even mention Plaintiff's memory issues at all, which are supported by treatment notes at the end of the relevant period which note abnormal memory ([R.] 968, 972). It is impossible for this court to determine if the ALJ's decision is supported by substantial evidence when he failed to explain his rejection of the two most disabling symptoms of Plaintiff's impairments.

(Pl. Br. 20).

The Commissioner argues that the ALJ applied the regulatory standards for evaluating Plaintiff's allegations of symptoms. (Comm'r Br. 13). He argues that the

14

record contains little evidence of fatigue or memory issues beyond Plaintiff's personal allegations, and even in those instances "physical examinations and mental status examinations documented normal findings." (Comm'r Br. 14). He points out that an ALJ need not reject each allegation of symptoms individually. Id. (citing Keyes-Zachary v. Astrue, 695 F.3d 1156, 1169 (10th Cir. 2012)). In her Reply Brief, Plaintiff asserts, "There is more than sufficient evidence to support Plaintiff's allegations," and that the ALJ did not reject the allegations at issue, but completely ignored them. (Reply 4). Plaintiff distinguishes Keyes-Zachary, "because, in this case, the ALJ did not discuss the two most disabling symptoms of Plaintiff's alleged impairment. The Tenth Circuit may not require the ALJ to explicitly reject every statement, but it does require the ALJ to consider all symptoms." Id. at 5 (citing Clark v. Barnhart, 64 F. App'x 688, 691 (10th Cir. 2003)).

### A. Standard for Evaluating Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a

> "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on February 22, 2019, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

### B. The ALJ's Findings

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," but that her allegations "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 17). He noted, "The medical evidence of record in this particular case is substantial, but the actual treatment contained therein is quiet [sic] minor. Instead, the record largely consists of routine visits and medication refills." Id.

The ALJ went on to summarize the record evidence, noting numerous inconsistencies he found therein. He recognized Plaintiff has fibromyalgia but found it inconsistent there was no indication she was under the care of a rheumatologist or had been treated with physical therapy or exercise. Id. at 18. He recognized she had degenerative disc disease but found it inconsistent there were no imaging studies, her treatment has been conservative, she had not been treated with physical therapy or a TENS unit and narcotic medications had not been used, all suggesting Plaintiff "has endured her back pain without the use of strong pain medication." Id. He recognized Plaintiff has migraine headaches but found she reported taking no medication for it, she is

17

not under the care of a neurologist, and "[d]espite her headaches, she has still managed to do things that require cognitive functions, such as drive, browse the internet, read, crochet, and watch television." (R. 18). Finally, the ALJ noted that despite alleging

> that her impairments are debilitating, [Plaintiff] has managed to still drive at least on a weekly basis to purchase groceries and pick up grandchildren, take care of her disabled husband, do light housework such as laundry, get the mail, help her 81-year-old mother, feed her mother's horse, cook meals, drive fairly long distances independently (30 miles), perform her personal care, take care of her pet turtles, watch movies such as Harry Potter, and watch television.

Id.

### C.    Analysis

The only reason given by the ALJ as noted above which has been disputed by Plaintiff is the ALJ's reliance on Plaintiff's daily activities. However, the ALJ is not relying on Plaintiff's activities to demonstrate that she is able to perform light work on a day-in, day-out basis, eight hours a day, five days a week. Rather, it is but one of nine inconsistencies upon which he relies to discount Plaintiff's allegations of symptoms. Moreover, although Plaintiff argues, "the ALJ did not reject the allegations at issue, but completely ignored them," and he "did not discuss the two most disabling symptoms of Plaintiff's alleged impairment," fatigue and brain fog, the court finds otherwise. (Reply 4-5). While the ALJ did not specifically name fatigue and brain fog as symptoms Plaintiff alleged, he did explain that he had considered Plaintiff's allegations. And, the activities discussed above confirm that consideration because they relate directly to allegations of fatigue and brain fog. Driving long distances, taking care of a disabled husband, helping an elderly mother, and feeding a horse are all activities at least

18

somewhat inconsistent with allegations of debilitating fatigue, whereas crocheting, driving an automobile, purchasing groceries, remembering to pick up grandchildren, doing light housework, performing personal care, and watching movies and television are all activities at least somewhat inconsistent with allegations of debilitating brain fog.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 11, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**